UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
UNITED STATES OF AMERICA                    )
                                            )
             v.                             )    Docket No. 05-10032-PBS
                                            )
DARLENE PACHECO                             )
_____)

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

Now comes the Defendant, Darlene Pacheco, by and through her counsel, and submits this Sentencing Memorandum and Motion for Downward Departure pursuant to USSG §5K2.13, p.s., diminished capacity, to assist the Court in deciding the appropriate sentence in this matter.

**A.      The Change in Departure Jurisprudence Since Koon v. United States**

Departures in criminal sentencing hearings have been the subject of much discussion and litigation. Ms. Pacheco will first analyze the general framework of departures under the Sentencing Guidelines, followed by an overview of departures after the landmark case of Koon v. United States, 116 S.Ct. 2035 (1996), and will outline the basis for her downward departure motion.

**1)      Departures under the Guidelines**

This Court has authority to depart in any case not falling within the "`heartland,' a set of typical cases embodying the conduct that each guideline describes" which were "carved out" by the Sentencing Commission. U.S.S.G. Introduction, p. 5, Ch. 1, Pt. A, §

4(b). "When the Court finds an atypical case ... the Court may consider whether a departure is authorized ... the Commission does not intend to limit the kinds of factors, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for departure in the unusual case." Id., at 5-6.

Both Congress and the Sentencing Commission agreed that there would be times when various factors about a defendant would make a particular sentence inappropriate. Therefore, both Congress and the Sentencing Commission set out which factors, if substantially different in a case than in the normal or "heartland" case, should be considered as bases for a downward departure from the usually appropriate Guideline range. U.S.S.G. Introduction, p. 5, Ch. 1, Pt. A, § 4(b) and 18 U.S.C. § 3553(b). The Guidelines provide:

The sentencing statute permits a Court to depart from a guideline-specified sentence . . . when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. "U.S.S.G. § 1A4(b), quoting 18 U.S.C. § 3553. See, United States v. Ponder, 963 F.2d 1506, 1509-10 (11th Cir. 1992) (Eleventh Circuit supported a departure "even if the circumstances presented by the case vary only in degree from that presented by the guideline.").

2)    **The Koon Decision**

The United States Supreme Court addressed the issue of guideline departures, in Koon v. United States, 116 S. Ct. 2035 (1996). The Supreme Court's Koon decision

clarified and reemphasized that sentencing Courts still have broad discretion to tailor appropriate sentences to the facts of a case.

Reversing a Ninth Circuit decision which had struck down the downward departures in Koon, the Supreme Court unanimously clarified that, from now on, departures should be reviewed on appeal only for abuse of discretion. Id. at 2043.[3] This ruling represented a significant change in the law of most Circuits, including this one. Prior to Koon, almost every Circuit had held that District Court decisions about whether a factor could be used as a valid legal basis for departure must be reviewed *de novo*.

In Koon, the Supreme Court went out of its way to stress that its decision was designed to promote a view of the Sentencing Reform Act that retains much of the traditional sentencing discretion of District judges. While acknowledging the Sentencing Guidelines' goal of uniformity, Justice Kennedy explained:

> "This too must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States District Judge. Discretion is reserved within the Sentencing Guidelines, and reflected by the standard of appellate review we adopt."116 S. Ct. at 2053. Accord Id. at 2046 ("the text of § 3742 manifests an intent that District Courts retain much of their traditional sentencing discretion").

In fact, the Supreme Court stated that, unless the Commission itself had "proscribed, as a categorical matter, consideration of the factor," Courts should not reject **any** factor as a possible ground for downward departure; rather, "the sentencing Court

-3-

must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." Id. at 2051.

In evaluating this "heartland, the Supreme Court cited the Guidelines' own acknowledgment that "the Commission did not adequately take into account cases that are, for one reason or another, unusual." Id. at 2044 (quoting U.S.S.G. ch. 1, pt. A, Intro. Comment 4(b)) (emphasis added). The Court described the expected process as follows: "A District judge now must impose on a defendant a sentence falling within the range of the applicable Guideline if the case is an ordinary one." Id. at 2044. The focus thus should be on whether the facts of a case are "unusual"--or not "ordinary"--with a sentencing Court still largely free to tailor an appropriate sentence through departure if the answer is yes. See, e.g., Id. at 2047 ("The relevant question is not, as the Government says, whether a particular factor is within the 'heartland' as a general proposition ... but whether the particular factor is within the heartland given all the facts of the case."):

The [Sentencing Reform] Act did not eliminate all of the District Court's discretion, however. Acknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances, 28 U.S.C. § 991(b)(1)(B), Congress allows District Courts to depart from the applicable guideline range if "the Court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Id. 116 S. Ct. at 2044 (quoting 18 U.S.C. § 3553(b)). See also Id. at 2051 ("The

-4-

Guidelines ... 'place essentially no limit on the number of potential factors that may warrant departure.'").

In Koon, the Supreme Court also approved of departures based on an aggregation of factors, even if none of those factors, when considered alone, provided a sufficient basis to support a downward departure. See, Id. at 2053-54 (remanding for possible re-imposition of downward departure despite recognition that District Court had found none of the factors individually worthy of departure); See also, Id. at 2054 (Stevens, J., concurring) (clarifying this understanding).

In sum, "[a] District Court's decision to depart from the Guidelines … will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing Court." Id. at 2046.

B. **Specific Grounds for Downward Departure in Ms. Pacheco's Case**

Relying on this sound precedent, Ms. Pacheco respectfully moves this Honorable Court for a downward departure based upon her significantly diminished mental capacity.

In U.S.S.G. §5K2.13, the Sentencing Commission expressly recognized diminished capacity as a valid basis for downward departures:

> "If the Defendant committed a non-violent offense while suffering from a significantly reduced mental capacity not resulting from voluntary intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offenses, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public."

The Ninth Circuit considered the bases for applying this departure ground in United States v. Cantu, 12 F.3d 1056 (9th Cir. 1993). The Court noted that "the [district] court's inquiry into the defendant's mental condition and the circumstances of the offense must be undertaken 'with a view to lenity, as section 5K2.13 implicitly recommends." Id. at 1511, citing, United States v. Chatman, 986 F.2d 1446, 1454 (D.C. Cir. 1993). The court reasoned that "[l]enity is appropriate because the purpose of §5K2.13 is to treat with some compassion those in whom a reduced mental capacity has contributed to the commission of a crime." Id.; See also, United States v. Garza-Juarez, 992 F.2d 896 (9th Cir. 1993)(affirming a downward departure where the defendant suffered from panic disorder and agoraphobia).

Section 5K2.13 provides that a sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. (However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.)

There is no question that Ms. Pacheco suffered from a mental disorder that significantly reduced her mental capacity, consistent with the facts of this case. In December 2002, after discovery of the underlying criminal offenses, and losing her job with Bank for whom she was employed, Ms. Pacheco was in crisis and sought psychiatric

help through Dr. Jeffrey Horowitz and Dr. Danuta Fichna in New Bedford, Massachusetts, and subsequently, with Dr. Eastman in Fall River, Massachusetts. At that time, Ms. Pacheco was diagnosed as suffering from "bipolar" disorder and depression, and obsessive addictive behavior leading to substance abuse. These diagnoses are specifically referenced in the "Mental and Emotional Health" section (sections 80-87) of the Presentence Report of the U.S. Probation Office.

The **Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition** (DSM-IV), (published by the American Psychiatric Association, Washington D.C., 1994), the main diagnostic reference of Mental Health professionals in the United States of America, states with respect to bipolar disorder, that the symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning. The symptoms are not due to the direct physiological effects of a substance (e.g., a drug of abuse, a medication) or a general medical condition (e.g., hypothyroidism). Additionally, the symptoms are not better accounted for by Bereavement, i.e., after the loss of a loved one, and the symptoms persist for longer than 2 months or are characterized by marked functional impairment, morbid preoccupation with worthlessness, suicidal ideation, psychotic symptoms, or psychomotor retardation.

Moreover, with respect to depression, this disease reduces a person's mental capacity, affecting how one thinks, and causing one to have a dim view of their circumstances and their future, not necessarily because of how their situation is, but because of how one filters information when depressed. In other words, a medically

depressed person is one who tends to act impulsively because her view of the range of viable options is impaired. This was precisely Ms. Pacheco's condition.

The third condition for application of this downward departure is that Ms. Pacheco's mental condition cannot have been caused by voluntary use of drugs or other intoxicants. While Ms. Pacheco did certainly engage in alcohol and substance abuse, these did not cause her bipolar disorder or her depression. Ms. Pacheco's documented aberrant behaviors, such a compulsive shopping, and continued use of Bank funds are indicative of the impairment in social, occupational, and other important areas of functioning occasioned by the bipolar disorder and depression, and were not due to the direct physiological effects of a substance or a general medical condition. It should also be noted that to qualify for the downward departure under §5K2.13, Ms. Pacheco's disorder need only be a contributing cause, not the sole cause of the offense. United States v. Cantu, 12 F.3d 1506, at 1515 (9th Cir. 1993).

Finally, Ms. Pacheco's criminal history does not indicate a need for incarceration to protect the public. As reflected in the Presentence Report, she has a total of "0" (zero) criminal history points. Furthermore, there is no indication whatsoever from any source that Ms. Pacheco has ever demonstrated any propensity for violence.

Perhaps even more important, however, is Ms. Pacheco's good prognosis for treatment. Dr. Eastman points out that during her counseling sessions, Ms. Pacheco discussed for example, her anger, her legal difficulties, and her insomnia with positive results. (Presentence Report, Section 82) Ms. Pacheco continues with mental health counseling, attending monthly sessions with Robin Durgin-King, a therapist in Fall River,

Massachusetts, working on issues concerning mood, her concern for her children, the instant offense, and her relationship with her husband. (Presentence Report, Sections 83-84). Ms. Pacheco continues successfully on a regimen of 10 mg of Wellbutrin, taken daily, prescribed by Dr. Fichna, a psychiatrist with whom she meets every four months. (Presentence Report, Section 85). Ms. Pacheco engaged in weekly substance abuse counseling sessions with Dr. Eastman, and as of May 2003, she was no longer using any drugs or alcohol. (Presentence Report, Sections 94-95). Ms. Pacheco indicates that she is interested in, and would likely benefit from, future substance abuse treatment. (Presentence Report, Section 96).

Given all of these factors, Ms. Pacheco requests that this Honorable Court depart downward by an amount sufficient to recognize the role that her mental health disorders have played in the commission of this offense. While such a departure is appropriate in this case, Ms. Pacheco nonetheless understands that she needs to be held accountable for her actions.

Consequently, Ms. Pacheco respectfully requests this Honorable Court to downwardly depart from the guideline range recommended in the Presentence Report.

                        Respectfully Submitted,
                        DARLENE PACHECO
                        By her Attorney,

                        /s/_____
                        James S. Lawrence, Esq.
                        FLAHERTY & LAWRENCE
                        70 Jefferson Boulevard
                        Warwick, RI, USA 02888
                        Telephone: (401) 781-7200
                        Telecopier: (401) 781-0110
                        BBO #553940

-10-

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that I did send via electronic mail, via facsimile and via first class mail, postage prepaid to: Tricia Marcy, U.S. Probation Office, 1 Courthouse Way, Suite 1200, Boston, MA 02110, and Adam Bookbinder, Asst. U.S. Attorney, 1 Courthouse Way, Suite 9200, Boston, MA 02110, on the 16th day of August 2005.

/s/_____
Jaclyn Eno